BEACH, (PLATT v.)   See Case No. 11,215.

## Case No. 1,153.

### BEACH v. TUCKER.

[3 App. Com'r Pat. 263½.]

Circuit Court, District of Columbia.   Jan. 20, 1860.

PATENTS FOR INVENTIONS — INTERFERENCE — APPEAL — EVIDENCE.

[1. When an interference is declared between an application for a patent and an existing patent, the patentee is as much entitled to appeal to the circuit court of the District of Columbia, when the question of priority of invention is determined against him, as the applicant for the patent would be had the priority of the existing patent been sustained.]

[2. Upon an application for a patent dated December 1, 1858, an interference was declared with a patent issued December 2, 1856. To sustain the applicant's claim to priority of invention, there was offered his own testimony, and that of another interested witness, that the invention was made in 1844 or 1845, and that drawings were made in 1856. It was also shown that he filed a caveat in 1848, which he renewed in 1857. On the other hand, it was shown that the patentee had been in the enjoyment of the rights conferred by his patent under such circumstances that the applicant was chargeable with notice of it. *Held*, on appeal to the circuit court of the District of Columbia, that the evidence was not sufficient to show priority on the part of the applicant, and the existing patent should be sustained.]

Appeal from the commissioner of patents, refusing to grant letters patent to Moses S. Beach for his invention of a new and useful improvement in printing presses, and awarding priority of invention to Stephen D. Tucker, for which said invention a patent was issued to him in 1856, and which said patent he was in the enjoyment of for a period of nearly two years. [The commissioner's decision was set aside.]

MORSELL, Circuit Judge. Beach says: "It has for many years been a leading object, particularly among the publishers of newspapers of extended circulation and power-press manufacturers, to contrive a method for printing on both sides of the sheet at a single operation, which at the same time should not retard or in any wise interrupt the high rate of speed already attained in printing, nor complicate the machinery of the press. My invention accomplishes this much desired end, almost without expense, and accomplishes it so completely and simply that it seems to leave nothing more to be desired in the field it occupies. It is peculiarly applicable moreover to book printing because of the perfect 'register' which it must afford, and opens to that kind of work the most rapid presses, all of which have been heretofore excluded on account of the necessary delay for printing. Printing sheets on the second side without the intervention of hand labor leads naturally to feeding them to the press by machinery in the first instance, by cutting them off when wanted from an endless roll of paper or otherwise, and it also leads (as the sheets are not thus liable to misprinting) to the application of contrivances which will fold them ready for the book-binder, the mail-man and the carrier before they leave the press. I do not, however, claim the printing of sheets on both sides at one operation. But what I do claim as my invention, and desire to secure by letters patent, is seizing the back or tail end of the sheet, and thus returning to the types for a second impression in the manner as substantially set forth." Tucker, in describing his claim, says: "I claim seizing the back end of the sheet of paper by finger or other equivalents, and transferring it after its first side is printed from one side of the groove to the other, substantially as described, so as to again pass it around the impression cylinder to print the second side, substantially as above described."

The commissioner adopts for his decision the report of the examiner, dated May 5, 1859, who says:

"In the matter of interference between the applications of Richard M. Hoe, Stephen D. Tucker, and the patent of Moses S. Beach for improvements in feeding paper to printing press, I have the honor to report:

"This is an interference of two applications with a patent granted to Moses S. Beach on the second of December, 1856. Had Beach alone applied, I should scarcely have considered it an interference with Beach's patent, the devices being different, but performing the same operation. Tucker's devices are identical in substance with Beach's, and being an avowed improvement on Hoe's, and applied for on the same day, the interference was evident. Beach does not prove his invention to be prior to the summer of 1856, (see testimony of John E. Powers, 3d interrogatory; James H. P. Dawson, 3d interrogatory; and Thomas L. Scoville's answer to the 4th interrogatory, &c.) Hoe proposed his devices in 1848, (see Stephen D. Tucker's testimony, 4th interrogatory,) and completed drawing in 1858. Tucker, the third party, proves, by testimony of Richard M. Hoe, his invention to have been in the winter of 1844–5. Drawings were made in November, 1856, (Exht. B, 4 interrogatory, &c.) James Blair's testimony is corroboratory of Hoe's, and the argument of Beach's counsel seems to admit the fact of prior invention on the part of Tucker. The plea of abandonment of their invention by Hoe and Tucker cannot be entertained. A caveat filed in the secret archives of this office in 1848, and renewed in 1857, which has been received as testimony, is followed by the applications for patents on the first of December, 1858. Just one day within the limit of statute, a neglected or abandoned caveat is not an abandoned invention. It is not made public, like a withdrawn application, and cannot, in consequence, be considered public property. I respectfully suggest that pat-

ents be allowed to Richard M. Hoe and Stephen D. Tucker for their respective inventions."

"May 6, 1859. The foregoing report is confirmed; priority of invention is adjudged Messrs. Richard M. Hoe and Stephen D. Tucker, to whom patents for their respective inventions are hereby ordered to issue," &c. Signed by the acting commissioner.

There are various reasons of appeal filed which appear fully and particularly to cover all the objections suggested in the arguments before me against the decision of the commissioners. To these reasons the commissioner has made a very general reply, which is to be regretted. All he says in his note addressed to me is: "Herewith are sent all the papers and models connected with the matter of appeal by Moses S. Beach, regarding which a notice was sent to the parties on the 8th instant. The nature of the decision from which Moses S. Beach appeals is sufficiently explained in the examiner's report, approved on the 6th of May last, and the office rests the defence on the accompanying documents, a list of which is enclosed." This was the state of the case when presented with all the documents and evidence by the commissioner, on the day and place appointed by me for the hearing of said appeal. The respective parties by their counsel also filed their arguments in writing, and submitted the case.

In the argument of the appellee's counsel, the objection to the jurisdiction of the judge to hear this appeal is raised upon the ground that the statute gives no right of appeal to a patentee in a case like the present. I have considered the arguments pro and con, with the authorities relied on by each party, and must confess that I am not free from doubts on which side the question should be decided. Under the influence of the new light thrown on the subject by the various new decisions referred to in the argument on the part of the appellant, and that no legal right may be denied to the appellant, and for the sake of future uniformity of decision, I think I ought to overrule the objection.

The next question to be decided is who was the prior inventor in the matter now in controversy. On the first of November, 1856, Moses S. Beach, the appellant, in compliance with the requisites of the statute, made oath that he verily believed himself to be the original and first inventor of the said invention, the subject of the issue in this case. Letters patent were issued to him, under the authority of which he has ever since exercised the rights thereby conferred, publicly and openly, and known or which might have been known to the appellee. This, according to the settled rule of law, must be considered prima facie evidence of the truth of the facts sworn to, and to throw the burden on the side of the appellee, by strong and satisfactory proof to overcome. The witnesses and proof offered are two in number, and the

caveat filed in the secret archives of the office in 1848, and renewed in 1857 by Hoe, (one of the witnesses,) and Tucker, (the appellee,) admitted in evidence in this case. As to the witness Hoe, it is objected in the argument, that he was an interested witness, and on that ground the credit of his testimony impeached, as before stated. The commissioner says: "Hoe proposed his devices in 1848, (see Tucker's testimony,) and completed drawings in 1858." It appears that Hoe's case, therefore, was supported by the testimony of Tucker, the appellee in this case; and Hoe seems to be relied on as the principal witness to support by his testimony of Tucker's claim in this case, in which patents are directed to issue respectively to them.

These circumstances, with some others, tend to show a community of interests in the subject matter of the two interferences unfavorably to affect the credit of the witness Hoe, and so the commissioner seems to think when he looks to the testimony of Blair to corroborate him. This testimony is also objectionable on the ground of uncertainty, and because the original scraps and drawings from them which he says he made were destroyed. Why were they not preserved and produced at the examination? As they were in writing, they were the best evidence, and not being produced, or the non production of them otherwise legally accounted for, the legal presumption is that if produced they would show the facts to be unfavorably otherwise. If, however, Tucker's invention, as stated in the testimony of Hoe & Blair, should be considered as proved. Beach shows an entire dissimilarity between the two methods three respectable mechanics, skilled and experienced in the nature and operation of such machines, (see testimony.) But suppose the testimony free from the afore-going objections, and sufficient to prove what is claimed for it, what are the principles of patent law applicable to it? The commissioner says Tucker proves his invention to have been in the winter of 1854–5. Drawings were made in November, 1856; his application for a patent December the 1st, 1858. Beach's patent dated December 2, 1856.

Has the appellee been guilty of such laches as to have incurred a statutory forfeiture? The commissioner says: "The plea of abandonment of their inventions by Hoe & Tucker cannot be entertained. A caveat filed in the secret archives of this office in 1848, and renewed in 1857, which has been received as testimony, is followed by the application for patents, on the first of December, 1858, just one day within the limit of the statute."

The commissioner does not say what statute he means. I suppose it to be the seventh section, c. 88, Act March 3, 1839. I have in several instances of appeal endeavored to give what I thought was the true construction of the provision of the statute to mean that the inventor might use, and vend to others to be used, the specific machine, &c., with-

out liability therefor to the inventor, or any other person interested in the invention, and no patent shall be held invalid, &c., provided, &c. Now, this shows that the privilege granted is applicable only to the inventor or those claiming under him, &c., that this construction is the true one, I refer to the case of Pierson v. Eagle Screw Co., [Case No. 11,156.] Is there one particle of proof in the whole case or is it pretended that the appellee has ever, by purchase or sale or license or otherwise, authorized Beach to use or exercise the invention claimed by him Tucker? On the contrary, is not the claim set up by Beach as an independent inventor, without the knowledge even that Tucker claimed to be the inventor? How, then, can the provision have the least application to this case? If not, then here is a person sleeping on his rights for nearly two years after a patent granted to an independent inventor, who had been publicly and openly using it under circumstances stated in the proof, showing that Tucker must have known it, or that he might have known it, without offering any sufficient reason for the delay, and without on his part objecting, and from which it must be presumed he allowed or acquiesced in it, this then, in my opinion, was a statutory bar to his claim, and notwithstanding the caveat filed some time after the patent issued. Such being my opinion, there is error in the decision of the commissioner, and the same is annulled and set aside, and the appellant considered the first and original inventor.